**LAW OFFICE OF BLAKE D. GUNN**
P.O. BOX 22146
MESA, ARIZONA 85277
480-710-8677
FAX 480-393-7162
BGUNN@GUNNFIRM.COM

Blake D. Gunn, SBN 019112
Attorney for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **In re:** | No. 10-bk-10214-RJH |
| **CM REALTY HOLDINGS, LLC,** | Chapter 11 |
| **Debtor in Possession.** | |

**DISCLOSURE STATEMENT IN SUPPORT OF DEBTORS' PLAN OF REORGANIZATION**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................................ 1

    A.      Definitions .................................................................................................................. 1

    B.      Purpose of the Disclosure Statement ......................................................................... 1

    C.      Importance to Creditors To Read This Disclosure Statement .................................... 1

    D.      Order Governing the Plan Confirmation Process ....................................................... 1

II.      SUMMARY OF THE PLAN ...................................................................................................... 1

III      REPRESENTATIONS ............................................................................................................... 2

    A.      Other Representations Not Authorized ...................................................................... 2

    B.      Representations Not Subject To Audit ....................................................................... 2

    C.      Source And Date Of Representations .......................................................................... 2

    D.      Intended Use Of Disclosure Statement ....................................................................... 2

    E.      Debtors' Recommendation To Accept Plan ................................................................ 2

    F.      Disclaimer .................................................................................................................. 2

IV      HISTORY AND BACKGROUND OF THE DEBTORS ............................................................ 4

    A.      History of the Debtors ................................................................................................. 4

    B.      Litigation .................................................................................................................... 4

    C.      Events Preceding the Chapter 11 Filing .................................................................... 6

    D.      Overview of Debtors' Current Business ..................................................................... 7

V      COMMENCEMENT OF AND SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE ......... 7

    A.      Commencement of the Chapter 11 Case .................................................................... 7

    B.      Engagement of Professionals ..................................................................................... 7

    C.      Creditors Committee .................................................................................................. 7

    D.      Bar Date ..................................................................................................................... 7

VI      SUMMARY OF THE PLAN ...................................................................................................... 7

    A.      Payment of Administrative Expenses and Priority Claims ........................................ 7

B.     Classification and Treatment of Claims and Interests ........................................................... 8

C.     Distributions to Creditors ........................................................................................................ 10

D.     Executory Contracts ................................................................................................................. 10

E.     United States Trustee ............................................................................................................... 11

VII     VOTING ON THE PLAN ..................................................................................................................... 11

A.     Who May Vote .......................................................................................................................... 11

B.     Voting Procedures .................................................................................................................... 12

C.     Voting Deadline ........................................................................................................................ 13

D.     Vote Required for Class Acceptance ...................................................................................... 13

E.     Fiduciaries and Other Representatives ................................................................................... 13

F.     Defects and Irregularities ........................................................................................................ 13

G.     Withdrawal of Ballots: Revocation ........................................................................................ 14

H.     Further Information .................................................................................................................. 14

VIII     CONFIRMATION OF THE PLAN ..................................................................................................... 14

A.     Confirmation Hearing ............................................................................................................. 14

B.     Objections to Confirmation of the Plan ................................................................................ 14

C.     Requirements for Confirmation of the Plan ......................................................................... 14

D.     Feasibility of the Plan ............................................................................................................. 15

E.     Confirmation without Acceptance of All Impaired Classes "Cramdown" ......................... 16

F.     Alternatives to Confirmation and Consummation of the Plan ............................................ 16

1.     Continued Operations and Delay in the Process ................................................... 17

2.     Alternative Plans ........................................................................................................ 17

3.     Liquidation Under Chapter 7/ Best Interest Test ................................................... 17

G.     Modifications and Amendments ............................................................................................. 18

H.     Effects of Confirmation .......................................................................................................... 19

1.     Binding Effect ............................................................................................................. 19

2.     Permanent Injunction ............................................................................................... 19

3.     Exculpation and Limitation on Liability ................................................................. 19

IX     CERTAIN RISK FACTORS RELATING TO THE PLAN ..........................................................................20

     A.     Failure to Confirm the Plan ..........................................................................................20

     B.     Failure to Consummate the Plan ..................................................................................20

X     CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ..........................................20

     A.     Federal Income Tax Consequences to the Debtors ........................................................20

     B.     Federal Income Tax Consequences to the Holders of Claims........................................20

XI.     RECOMMENDATION AND CONCLUSION ..........................................................................20

EXHIBITS TO THE PLAN

     EXHIBIT A—Plan of Reorganization propounded by Debtor

     EXHIBIT B—Debtor's Liquidation Analysis/Available Assets

     EXHIBIT C—Debtor's Listing of Real Properties and Entities owned by it

     EXHIBIT D—Debtor's List of Projected Income

     EXHIBIT E—Liquidation Dividend

# I.    INTRODUCTION

CM Realty Holdings, LLC, Debtor and Debtor in Possession in the above-captioned Chapter 11 reorganization case, is furnishing this Disclosure Statement and the Exhibits hereto, the accompanying Ballots and the related materials delivered herewith pursuant to Section 1126(b) of the Bankruptcy Code, in connection with its solicitation of acceptances of the proposed Plan of Reorganization described herein and annexed hereto as Exhibit A. The Debtor is soliciting acceptances of his Plan from certain Claimants who are entitled to vote on the Plan pursuant to Section 1126 of the Bankruptcy Code.

## A.  Definitions

All capitalized terms not otherwise described in this Disclosure Statement have the meanings ascribed to them in the Plan, which is attached hereto as Exhibit A.

## B.  Purpose of the Disclosure Statement

The Debtor is furnishing this Disclosure Statement to all impaired creditors who are entitled to vote to accept or reject the Plan.  The Disclosure Statement is to be used by each such creditor solely in connection with its evaluation of the Plan.  Use of the Disclosure Statement for any other purpose is not authorized.  The purpose of the Disclosure Statement is to provide "adequate information" as that term is defined in Section 1125 of the Bankruptcy Code, to enable Creditors whose Claims are impaired under the Plan to make an informed decision regarding whether to accept or reject the Plan.

## C.  Importance to Creditors to Read This Disclosure Statement

**YOU SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN IN ITS ENTIRETY BEFORE VOTING ON THE PLAN.  THIS DISCLOSURE STATEMENT SUMMARIZES CERTAIN TERMS OF THE PLAN, BUT THE PLAN ITSELF WILL BE THE GOVERNING DOCUMENT.  IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN ARE CONTROLLING.**

## D.    Order Governing the Plan Confirmation Process

On _____, 2010, the Bankruptcy Court entered its order (1) approving this Disclosure Statement as containing "adequate information" pursuant to Section 1125 of the Bankruptcy Code, (2) fixing  _____, 2010 as the deadline for filing and serving any objections to Confirmation of the Plan, (3) fixing _____, 2010 as the deadline for voting to accept or reject the Plan, and (4) setting _____ at ___:____ a.m./p.m. in Courtroom _____ as the date and time to begin a hearing on the Confirmation of the Plan.

## II.  SUMMARY OF THE PLAN

The following summary of the Plan is provided for the convenience of the reader to provide an overview of the Plan provisions. This summary is qualified and should be read in conjunction with the more detailed information and financial statements and notes appearing elsewhere in this Disclosure Statement.

The Debtor now proposes a Plan to pay its creditors a portion of their Claims over a period of time.

The Plan provides for the payment of the secured debt by (1) determining the fair market value of the collateral securing such debt pursuant to 11 U.S.C. §506(a); (2) curing pre-petition defaults and post-petition defaults and payment of the secured debt pursuant to the terms of the Plan and resuming the payment of monthly interest and principal payments (or the sale of collateral or reconveyance of that collateral in satisfaction of secured claims), (3) the full payment of Administrative Expenses, Priority Tax Claims, and Priority Claims on the Effective Date of the Plan, and (4) the payment to Unsecured Creditors of a percentage of the full amount of their allowed claims over a period of five years in quarterly payments from excess proceeds from asset sales and contributions made by the Debtor from its income.

## III
## REPRESENTATIONS

**A.      Other Representations Not Authorized**.

No representations or other statements concerning the Debtor (particularly as to its future income or the value of its assets) are authorized by the Debtor other than those expressly set forth in this Disclosure Statement. You should not rely upon any representations or inducements made to secure your acceptance of the Plan other than those set forth in this Disclosure Statement.

**B.      Representations Not Subject To Audit**.

The information contained herein has been prepared by the Debtor in good faith, based upon information available to the Debtor and its counsel. None of the information herein concerning the Plan has been subject to a verified audit.

**C.      Source And Date Of Representations**.

The Debtor provided the factual information for this disclosure statement. The Debtor believes that the statements contained in this Disclosure Statement are accurate as of the date hereof unless another time is specified. The facts, statements and representations herein may be altered by events and circumstances occurring after the date of this Disclosure Statement. Delivery of this Disclosure Statement should not be construed as implying that there has been no change in the facts set forth herein since the date of this Disclosure Statement.

**D.      Intended Use Of Disclosure Statement**.

    This Disclosure Statement is intended for the sole use of Creditors and other parties-in-interest and for the sole purpose of assisting them in making an informed decision about the Plan.  This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan, and nothing contained in it shall constitute an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtor or any other party or be deemed conclusive advice on the tax or other legal effects of the reorganization of holders of Claims or interests.

**E.      Debtors' Recommendation To Accept Plan**.

    **THE DEBTOR STRONGLY URGES EACH CREDITOR TO <u>VOTE TO "ACCEPT" THE DEBTORS' PLAN</u>. DEBTORS BELIEVE THAT UPON EVALUATION OF THE PLAN, EACH PERSON OR ENTITY ENTITLED TO VOTE WILL CONCLUDE THAT THE DEBTORS" PLAN IS FAIR AND REASONABLE TO ALL THE CREDITORS OF THE ESTATE.  CREDITORS WHO HAVE QUESTIONS REGARDING THE CONTENTS OF THIS DISCLOSURE STATEMENT OR THE DEBTORS' PLAN MAY CONTACT BLAKE D. GUNN, ATTORNEY FOR THE DEBTORS AT (480) 710-8677.**

**F.      Disclaimer**

    **THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT CONSTITUTES <u>NEITHER A CERTIFICATION</u> THAT THE FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS ACCURATE <u>NOR AN ENDORSEMENT</u> OF THE PLAN.**

    **THIS DISCLOSURE STATEMENT HAS BEEN PROMULGATED BY THE PROPONENT IN AN EFFORT TO SOLICIT CREDITORS AND EQUITY INTEREST HOLDERS TO VOTE TO ACCEPT THE PLAN.  THE SOLICITATION IS A SOLICITATION BY THE PROPONENT ONLY.  IT IS NOT A SOLICITATION BY THE ATTORNEYS OR ACCOUNTANTS, AND THE REPRESENTATIONS MADE HEREIN ARE THOSE OF THE PROPONENT AND NOT OF THE DEBTOR'S ATTORNEYS OR ACCOUNTANTS.**

    **CERTAIN MATERIALS CONTAINED IN THIS DISCLOSURE STATEMENT ARE TAKEN DIRECTLY FROM OTHER, READILY ACCESSIBLE DOCUMENTS OR ARE DIGESTS OF DOCUMENTS. WHILE EFFORTS HAVE BEEN MADE TO CONVEY ACCURATELY THE CONTENTS OF SUCH DOCUMENTS, YOU ARE URGED TO EXAMINE THE DOCUMENTS THEMSELVES AND TO USE THE DESCRIPTIONS OF**

DOCUMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ONLY AFTER HAVING CONDUCTED SUCH AN EXAMINATION.

NO REPRESENTATIONS OR ASSURANCES CONCERNING THE DEBTOR, INCLUDING, WITHOUT LIMITATION, ITS FUTURE BUSINESS OPERATIONS, THE VALUE OF ITS PROPERTY, OR THE VALUE OF SECURITIES TO BE ISSUED PURSUANT TO THE PLAN ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.  IN ARRIVING AT YOUR DECISION TO ACCEPT OR REJECT THE PLAN, YOU SHOULD NOT RELY UPON ANY REPRESENTATIONS OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN WHICH ARE OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT.  SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE PROPONENTS WHO, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

EFFORTS HAVE BEEN MADE TO PREPARE ALL UNAUDITED FINANCIAL STATEMENTS WHICH MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPALS.  HOWEVER, AS TO ALL FINANCIAL STATEMENTS, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THE ACCURACY OF THE INFORMATION CONTAINED IN THOSE STATEMENTS TO BE WITHOUT ERROR.

THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECTED TO AN EXAMINATION BY INDEPENDENT, CERTIFIED PUBLIC ACCOUNTANTS.  THE DEBTORS HAVE KEPT RECORDS SUBSEQUENT TO THE FILING OF THE PETITION COMMENCING THIS CASE AND THE DEBTORS HAVE FILED MONTHLY FINANCIAL REPORTS WITH THE COURT SINCE THAT DATE.

THE LIQUIDATION ANALYSIS CONTAINED IN THIS DISCLOSURE STATEMENT WAS NEITHER COMPILED BY INDEPENDENT, CERTIFIED PUBLIC ACCOUNTANTS NOR SUBJECTED TO AN AUDIT OR EXAMINATION BY INDEPENDENT, CERTIFIED PUBLIC ACCOUNTANTS.

<u>IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU SHOULD DO SO</u>.  UNDER THE BANKRUPTCY CODE, DETERMINING THE OUTCOME OF BALLOTING ON THE PLAN REQUIRES A CALCULATION WHICH CONSIDERS THE VOTES OF THOSE CREDITORS AND EQUITY INTEREST HOLDERS WHO ACTUALLY VOTED ON THE PLAN.  YOUR RIGHTS MAY BE AFFECTED EVEN IF YOU DO NOT VOTE ON THE PLAN.  YOUR OPPORTUNITY TO HAVE THE OUTCOME YOU DESIRE WILL LIKELY BE ENHANCED IF YOU VOTE.

**NOTHING IN THIS DISCLOSURE STATEMENT LIMITS DEBTOR'S RIGHTS TO OBJECT TO ANY PROOFS OF CLAIMS OR INTERESTS FILED IN THIS CASE.**

**BECAUSE THE PROPONENT DOES NOT EXPRESS ANY OPINION AS TO THE TAX CONSEQUENCES OF THE PLAN, IN NO EVENT WILL THE DEBTORS, OR THEIR PROFESSIONAL ADVISORS THEY HAVE ENGAGED, BE LIABLE IF, FOR ANY REASON, THE TAX CONSEQUENCES OF THE PLAN ARE NOT AS ANTICIPATED BY CREDITORS AND EQUITY INTEREST HOLDERS. CREDITORS AND EQUITY INTEREST HOLDERS MUST LOOK SOLELY TO AND RELY SOLELY UPON THEIR OWN ADVISORS AS TO THE TAX CONSEQUENCES OF THE PLAN.**

# IV
## HISTORY AND BACKGROUND OF THE DEBTOR

A.      **History of the Debtor**

**Background**

CM Realty Holdings, LLC is a company that owns and operates six residential rental properties. The Debtor's business is unique because it specializes in short-term, luxury rentals. The Debtor's income is therefore seasonal, as the majority of its clientele plans their visits during the cooler months of the year. All properties are investment properties as they relate to the Debtor. CM Realty's principal, Connie Martin, was able to maintain payments on all of its properties until the downturn in the Phoenix-area real estate market. As rental income decreased because of fewer visitors and general depression of competitive rents, she began to liquidate personal assets to continue making payments on the rental properties. Finally, Ms. Martin determined that the best chance to reorganize the business was to form CM Realty Holdings, LLC and operate it as a holding company and reorganization vehicle, and preserve the goodwill she had created in the marketplace under her name and under the name of Incline Properties, Inc.

**Properties**

Attached as Exhibit C is a listing of the Debtor's real property.

**Other Assets**

The Debtor's other non-exempt assets consist primarily of customary appliances and furnishings normally supplied with a residential rental property. Those items of property are identified in Schedule B to the Debtor's Chapter 11 Petition.

**Historical Income Information**

Attached as Exhibit D is a schedule showing the income received by the Debtor on a monthly basis. The Debtor entity has operated for less than six months. Therefore, the Debtor has based its income projections on historical information derived from prior operations of non-debtors.

The Debtor's income is derived solely from rental payments received pursuant to the terms of individual leases and a master lease agreement of the real property identified in Exhibit "C." The tenant under the individual property leases and the master lease is Incline Properties, Inc. The Debtor's principal, Connie Martin, is the sole shareholder of Incline Properties. Rents paid under the individual lease and master lease are net rents; thus, Incline Properties, Inc. is required to pay additional sums for rental taxes, homeowner association dues, property maintenance, and real property taxes, and there is no additional cost to the Debtor to maintain those items. Incline Properties, Inc. conducts all necessary marketing and management activities. Consequently, the Debtor does not incur cash outflow for those expenses.

## B.    Litigation

The Debtor is not presently involved in litigation other than litigation pending in the Bankruptcy Court. The Debtor engages in routine special detainer proceedings to evict tenants who do not pay rent, and collection actions against tenants who have damaged the rental properties. However, no such litigation is pending. Other that such litigation, the Debtor does not foresee other, future litigation against it or by it.

## C.    Events Preceding the Chapter 11 Filing

Immediately before the Petition Date, the debts secured by the rental properties were in default, and foreclosure proceedings had begun. The Debtor entity was created as a reorganization vehicle to preserve the value of the business conducted by the Debtor's principal and maximize the likelihood of a successful from the contemplated Chapter 11.

# V
# COMMENCEMENT OF AND SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

## A.    Commencement of the Chapter 11 Case

The Debtor filed a voluntary petition in this Court for reorganization relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. sec. 101-1330, on April 8, 2010.

## B.    Engagement of Professionals

The Bankruptcy Court authorized the Debtor to retain the Law Office of Blake D. Gunn as his attorneys on a general retainer to provide services and to assist the Debtor in reorganizing under Chapter 11.

### C.     Creditors Committee

No Official Committee of Unsecured Creditors has been appointed in the Chapter 11 case.

### D.     Bar Date

Pursuant to the orders of the Bankruptcy Court, the bar date for Unsecured Creditors to file proofs of Claims is set as the date objections to this First Amended Disclosure Statement are due.  That date is August ___, 2010.

The Plan provides for different dates for the filing of proofs of claims for rejected Executory Contracts and for Administrative Expenses that arise from or relate to unpaid rent accruing after the Petition Date.

## VI
## SUMMARY OF THE PLAN

### A.     Payment of Administrative Expenses and Priority Tax Claims

Administrative Expenses consist of the costs and expenses of administration of the Chapter 11 case.  They include, but are not limited to, expenses incurred by the Debtor since the Petition Date, any payments to Debtor in Possession lenders (if any), and the outstanding, unpaid fees and expenses of the professionals retained by the Debtor as approved by the Court. All payments to professionals in connection with the Bankruptcy case for compensation and reimbursement of expenses will be made in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules and are subject to approval by the Court as being reasonable.   The Debtor estimates that the unpaid Administrative Expenses on the Effective Date will be $10,000.00.

The allowed amount of Administrative Expenses shall be paid on the later of:  (1) the Effective Date; (2) within ten days after an Order approving the Administrative Expense is entered if the Claim is one of a professional person employed under Sections 327 or 1103 of the Bankruptcy Code; (3) twenty days after the Claim becomes an Allowed Claim for all other Administrative Expenses; or (4) on the date an Administrative Expense becomes payable pursuant to any agreement between the Debtors and the holder of such Administrative Expense.

Administrative Expenses with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

Priority Tax Claims are those tax Claims entitled to priority pursuant to section 507 (a) (8) of the Bankruptcy Code.  Priority Tax Claims are Impaired by the Plan.  Each Allowed Priority Tax Claim shall be paid over time with interest in quarterly payments.

Quarterly payments shall commence on the first day of the first month in the first full quarter following the Effective Date, and shall continue for four years (16 quarters) after the Effective Date.

Presently, there are no approved Class 1 Priority Claims, as the Debtor is current on all rental and real property taxes. However, the Debtor will amend this Disclosure Statement and his Plan of Reorganization if any creditor claims a Classs 1 Priority Claim.

**B.        Classification and Treatment of Claims and Interests**

The Claims against the Debtor are separately classified for purposes of voting to accept or reject the Plan and for purposes of distribution. The classification and the determination of which Claimants are in each Class is determined by the requirements of section 1122 of the Bankruptcy Code which requires a plan to classify the claims of Debtor's creditors and the interests of its equity holders. The Bankruptcy Code requires that, except for the classification of certain claims classified for administrative convenience, a plan of reorganization may place a claim of a creditor or an interest of an equity holder in a particular class only if such claim is "substantially similar to the other claims or interest of such class.

The Bankruptcy Code also requires that a plan of reorganization provide for the same treatment for each claim or interest or a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment of its claim or interest. The Debtor believe that it has complied with such standard. If the Bankruptcy Court finds otherwise, it could deny confirmation of the Plan if the Claimholders and Interest holders affected do not consent to the treatment afforded them under the Plan

The Plan classifies the following in separate Classes:

1.        Class 1 is made up of the Claims that are given priority by the Bankruptcy Code that are not tax claims owed to governmental agencies. Class 1 is Impaired by the Plan. Class 1 Priority Claims shall be paid in quarterly payments over four years (16 quarters).

2.        Class 2 is made up of Claims that are in the amount of $500.00 or less. These claims are all Claims that would otherwise be classified as Class 5 Unsecured Claims that are for $500.00 or less, or for more than $500.00 if the holder of the Claim has elected, on the Ballot provided for voting on the Plan within the time fixed by the Court and returning such Ballot, to accept $50.00 in full satisfaction, discharge and release of such Claim. Class 2 Claims are not Impaired. Class 2 Administrative Convenience Class Claims shall be paid in full within thirty (30) days after the Effective Date.

3.        Class 3-A consists of the Secured Claim of American Home Mortgage Services, Inc., in the approximate amount of $876,231.00, prior to the determination of the value of the collateral pursuant to 11 U.S.C. §506(a). The Class 3-A Claim is secured by a first position lien on the Debtor's real property located at 10032 N.

Palisades, Fountain Hills, Arizona. The Class 3-A claim shall be reduced from the scheduled amount of $876,231.00 to the Allowed Secured Claim in the amount of fair market value of the collateral securing such lien pursuant to 11 U.S.C. §506(a). The estimated fair market value of the Class 3-A collateral as of the Petition Date is $800,000.00. The Class 3-A Allowed Secured Claim shall bear interest at the rate of 3% per annum (the present note rate) on the outstanding principal balance of the Class 3-A Allowed Secured Claim. The Allowed Secured Claim Amount shall be paid monthly based on a 30-year amortization of the Allowed Secured Claim Amount at 2% per annum interest. For example, on an Allowed Secured Claim amount of $800,000.00 the monthly payment to the Claimant shall be $2,956.96 commencing the first day of the second month after the Effective Date. AHMSI shall retain its security interest in the Class 3-A collateral house to the extent it holds an Allowed Secured Claim in that property to the extent determined by the Court pursuant to 11 U.S.C. §506 until the completion of payments required herein. Prior to confirmation, the Debtor shall make adequate protection payments of $1,000.00 per month to AHMSI to protect it from the diminution in value of the collateral. To the extent there is any indebtedness owed to AHMSI left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate. Alternatively, if AHMSI elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 30 year amortization without interest. The monthly payment to the Claimant shall be in the amount of $2,222.56 commencing the first day of the second month after the Effective Date. AHMSI shall retain all its liens and security interests in the 10032 N. Palisades, Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. §506 until the completion of the payments called for herein. At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 10032 N. Palisades Property to AHMSI in full satisfaction of any and all Claims held by AHMSI against the Debtor or its principals. Class 3-A is impaired under the Plan.

4.     Class 3-B consists of the Secured Claim of Amtrust Bank in the approximate amount of $414,000.00, prior to the determination of the value of the collateral pursuant to 11 U.S.C. §506(a). The Class 3-B Claim is secured by a first position lien on the Debtor's real property located at 10406 N. Demaret, Fountain Hills, Arizona. The Class 3-B claim shall be reduced from the scheduled amount of $414,000.00 to the Allowed Secured Claim in the amount of fair market value of the collateral securing such lien pursuant to 11 U.S.C. §506(a). The estimated fair market value of the Class 3-B collateral as of the Petition Date is $350,000.00. The Class 3-B Allowed Secured Claim shall bear interest at the rate of 3% per annum (the present note rate) on the outstanding principal balance of the Class 3-B Allowed Secured Claim. The Allowed Secured Claim Amount shall be paid monthly based on a 30-year amortization of the Allowed Secured Claim Amount at 2% per annum interest. For example, on an Allowed Secured Claim amount of $350,000.00 the monthly payment to the Claimant shall be $1,293.67 commencing the first day of the second month after the Effective Date. Amtrust shall retain its security interest in the Class 3-B collateral house to the extent it holds an Allowed Secured Claim in that property to the extent determined by the Court pursuant to 11 U.S.C. §506 until the completion of payments required herein. Prior to confirmation, the Debtor shall make adequate protection payments

of $1,000.00 per month to Amtrust Bank to protect it from the diminution in value of the collateral. To the extent there is any indebtedness owed to Amtrust left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate. Alternatively, if Amtrust elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 30 year amortization without interest. The monthly payment to the Claimant shall be in the amount of $1,150.02 commencing the first day of the second month after the Effective Date. Amtrust shall retain all its liens and security interests in the 10406 N. Demaret, Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. §506 until the completion of the payments called for herein. At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 10460 N. Demaret Property to Amtrust in full satisfaction of any and all Claims held by Amtrust against the Debtor or its principals. Class 3-B is impaired under the Plan.

5.      Class 3-C consists of the Secured Claim of Amtrust Bank in the approximate amount of $221,035.00, prior to the determination of the value of the collateral pursuant to 11 U.S.C. §506(a). The Class 3-C Claim is secured by a first position lien on the Debtor's real property located at 1833 E. Patrick Lane, Phoenix, Arizona. The Class 3-C claim shall be reduced from the scheduled amount of $221,035.00 to the Allowed Secured Claim in the amount of fair market value of the collateral securing such lien pursuant to 11 U.S.C. §506(a). The estimated fair market value of the Class 3-C collateral as of the Petition Date is $155,000.00. The Class 3-C Allowed Secured Claim shall bear interest at the rate of 3% per annum (the present note rate) on the outstanding principal balance of the Class 3-B Allowed Secured Claim. The Allowed Secured Claim Amount shall be paid monthly based on a 30-year amortization of the Allowed Secured Claim Amount at 2% per annum interest. For example, on an Allowed Secured Claim amount of $155,000.00 the monthly payment to the Claimant shall be $572.31 commencing the first day of the second month after the Effective Date. Amtrust shall retain its security interest in the Class 3-C collateral house to the extent it holds an Allowed Secured Claim in that property to the extent determined by the Court pursuant to 11 U.S.C. §506 until the completion of payments required herein. Prior to confirmation, the Debtor shall make adequate protection payments of $500.00 per month to Amtrust Bank to protect it from the diminution in value of the collateral. To the extent there is any indebtedness owed to Amtrust left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate. Alternatively, if Amtrust elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 30 year amortization without interest. The monthly payment to the Claimant shall be in the amount of $613.89 commencing the first day of the second month after the Effective Date. Amtrust shall retain all its liens and security interests in the 1833 E. Patrick Lane Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. §506 until the completion of the payments called for herein. At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 1833 E. Patrick Lane Property to Amtrust in full satisfaction of any and all Claims held by Amtrust against the Debtor or its principals. Class 3-C is impaired under the Plan.

6.     Class 3-D consists of the Secured Claim of Chase Bank ("Chase") in the approximate amount of $650,000.00, prior to the determination of the value of the collateral pursuant to 11 U.S.C. §506(a). The Class 3-D Claim is secured by a first position lien on the Debtor's real property located at 10847 N. Mountain Vista, Fountain Hills, Arizona. The Class 3-D claim shall be reduced from the scheduled amount of $650,000.00 to the Allowed Secured Claim in the amount of fair market value of the collateral securing such lien pursuant to 11 U.S.C. §506(a). The estimated fair market value of the Class 3-D collateral as of the Petition Date is $400,000.00. The Class 3-D Allowed Secured Claim shall bear interest at the rate of 3% per annum on the outstanding principal balance of the Class 3-D Allowed Secured Claim. The Allowed Secured Claim Amount shall be paid monthly based on a 30-year amortization of the Allowed Secured Claim Amount at 2% per annum interest. For example, on an Allowed Secured Claim amount of $450,000.00 the monthly payment to the Claimant shall be $1,478.48 commencing the first day of the second month after the Effective Date. Chase shall retain its security interest in the Class 3-D collateral house to the extent it holds an Allowed Secured Claim in that property to the extent determined by the Court pursuant to 11 U.S.C. §506 until the completion of payments required herein. Prior to confirmation, the Debtor shall make adequate protection payments of $1,000.00 per month to Chase Bank to protect it from the diminution in value of the collateral. To the extent there is any indebtedness owed to Chase left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate. Alternatively, if Chase elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 30 year amortization without interest. The monthly payment to the Claimant shall be in the amount of $1,949.25 commencing the first day of the second month after the Effective Date. Chase shall retain all its liens and security interests in the 10847 N. Mountain Vista Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. §506 until the completion of the payments called for herein. At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 10847 N. Mountain Vista Property to Chase in full satisfaction of any and all Claims held by Chase against the Debtor or its principals.

7.     Class 3-E consists of the Secured Claim of ING Direct ("ING") in the approximate amount of $701,685.00, prior to the determination of the value of the collateral pursuant to 11 U.S.C. §506(a). The Class 3-E Claim is secured by a first position lien on the Debtor's real property located at 10841 N. Mountain Vista, Fountain Hills, Arizona. The Class 3-E claim shall be reduced from the scheduled amount of $701,685.00 to the Allowed Secured Claim in the amount of fair market value of the collateral securing such lien pursuant to 11 U.S.C. §506(a). The estimated fair market value of the Class 3-E collateral as of the Petition Date is $400,000.00. The Class 3-E Allowed Secured Claim shall bear interest at the rate of 2% per annum on the outstanding principal balance of the Class 3-E Allowed Secured Claim. The Allowed Secured Claim Amount shall be paid monthly based on a 30-year amortization of the Allowed Secured Claim Amount at 2% per annum interest. For example, on an Allowed Secured Claim amount of $400,000.00 the monthly payment to the Claimant shall be $1,478.48 commencing the first day of the

second month after the Effective Date.  Chase shall retain its security interest in the Class 3-E collateral house to the extent it holds an Allowed Secured Claim in that property to the extent determined by the Court pursuant to 11 U.S.C. §506 until the completion of payments required herein.  Prior to confirmation, the Debtor shall make adequate protection payments of $1,000.00 per month to Chase Bank to protect it from the diminution in value of the collateral.  To the extent there is any indebtedness owed to Chase left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate.  Alternatively, if Chase elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 30 year amortization without interest.  The monthly payment to the Claimant shall be in the amount of $1,949.13 commencing the first day of the second month after the Effective Date. ING shall retain all its liens and security interests in the 10841 N. Mountain Vista Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. §506 until the completion of the payments called for herein.  At any time within four years of the Effective Date, the Debtor shall have the right to surrender the 10841 N. Mountain Vista Property to ING in full satisfaction of any and all Claims held by ING against the Debtor or its principals.

        8.      Class 3-F consists of the Secured Claim of PNC Mortgage ("PNC") in the approximate amount of $603,000.00, prior to the determination of the value of the collateral pursuant to 11 U.S.C. §506(a).  The Class 3-E Claim is secured by a first position lien on the Debtor's real property located at 9425 N. Four Peaks Way, Fountain Hills, Arizona.  The Class 3-F claim shall be reduced from the scheduled amount of $603,000.00 to the Allowed Secured Claim in the amount of fair market value of the collateral securing such lien pursuant to 11 U.S.C. §506(a).  The estimated fair market value of the Class 3-F collateral as of the Petition Date is $575,000.00.  The Class 3-F Allowed Secured Claim shall bear interest at the rate of 2% per annum on the outstanding principal balance of the Class 3-F Allowed Secured Claim.  The Allowed Secured Claim Amount shall be paid monthly based on a 30-year amortization of the Allowed Secured Claim Amount at 2% per annum interest. For example, on an Allowed Secured Claim amount of $550,000.00 the monthly payment to the Claimant shall be $2,032.52 commencing the first day of the second month after the Effective Date.  PNC shall retain its security interest in the Class 3-D collateral house to the extent it holds an Allowed Secured Claim in that property to the extent determined by the Court pursuant to 11 U.S.C. §506 until the completion of payments required herein.  Prior to confirmation, the Debtor shall make adequate protection payments of $1,000.00 per month to PNC to protect it from the diminution in value of the collateral. To the extent there is any indebtedness owed to Chase left unpaid by this treatment, the Creditor may assert a Class 4 Unsecured Deficiency Claim against the Estate. Alternatively, if PNC elects pursuant to 11 U.S.C. section 1111(b)(1)(A)(i) to, instead have its Allowed Claim paid in full, the Allowed Claim Amount shall be paid monthly based on a 30 year amortization without interest. The monthly payment to the Claimant shall be in the amount of $2,542.27 commencing the first day of the second month after the Effective Date. PNC Mortgage shall retain all its liens and security interests in the 9524 N. Four Peaks Way Property to the extent it holds an Allowed Secured Claim in the same as determined by the Court pursuant to 11 U.S.C. §506 until the completion of the payments called for herein.  At any time within four years of the Effective Date, the

Debtor shall have the right to surrender the 9524 N. Four Peaks Way Property to PNC Mortgage in full satisfaction of any and all Claims held by PNC Mortgage against the Debtor or its principals.

9. Class 3-G consists of the Secured Claim of CitiMortgage, Inc. ("CitiMortgage") in the approximate amount of $476,000.00 prior to the determination of the value of the collateral pursuant to 11 U.S.C. §506. The Class 3-G claim is secured by real property located at 9425 N. Four Peaks Way, Fountain Hills, Arizona, and is subordinate to the Class 3-F claim of PNC Mortgage. The estimated value of the Four Peaks Way Property is $575,000.00. Consequently, the Class 3-G claim is wholly undersecured. However, to avoid litigation concerning the value of the Four Peaks Way Property, the Debtor proposes to pay Citimortgage, as its Allowed Secured Claim, a fixed sum of $10,000.00 on the first day following the sixth month after the Effective Date in full satisfaction of its Secured Claim. Citimortgage shall retain its security interest in the Property until the payment identified in this subsection is paid in full. Upon payment in full of the Allowed Secured Claim, Citimortgage's debt shall be deemed satisfied, Citimortgage's lien on the Four Peaks Way Property shall be extinguished, Citimortgage shall have no further *in rem* rights against the Four Peaks Way Property, and Citimortgage shall have no further *in personam* remedies against the Debtor or its principals.

10. Class 3-H consists of the Secured Claim of Terry Koch ("Koch") in the approximate amount of $4,500.00 prior to the determination of the value of the collateral pursuant to 11 U.S.C. §506. The Class 3-H claim is secured by real property located at 9425 N. Four Peaks Way, Fountain Hills, Arizona, and is subordinate to the Class 3-F claim of PNC Mortgage and the Class 3-G claim of CitiMortgage, Inc. The estimated value of the Four Peaks Way Property is $575,000.00. Consequently, the Class 3-H claim is wholly undersecured. However, to avoid litigation concerning the value of the Four Peaks Way Property, the Debtor proposes to pay Koch, as her Allowed Secured Claim, a fixed sum of $2,500.00 on the first day following the sixth month after the Effective Date in full satisfaction of its Secured Claim. Koch shall retain her security interest in the Property until the payment identified in this subsection is paid in full. Upon payment in full of the Allowed Secured Claim, Koch's debt shall be deemed satisfied, Koch's lien on the Four Peaks Way Property shall be extinguished, Koch shall have no further *in rem* rights against the Four Peaks Way Property, and Koch shall have no further *in personam* remedies against the Debtor or its principals.

11. Class 4 consists of the Deficiency Claims arising from the difference between a Claim and the fair market value of the Collateral for such Claim. Class 4 claims shall be treated identically to the Class 5 Allowed General Unsecured Claims.

12. Class 5 consists of the Allowed General Unsecured Claims and all Claims not otherwise classified. Class 5 Claims are impaired under the Plan. The Debtor shall pay Class 5 claims, pro rata, in quarterly payments commencing on the first Business Day of the first full month of the next full quarter following the anniversary of the Effective Date and on the first Business Day of each quarter thereafter from income remaining after

payment of higher priority claims. In no case shall the payment period extend beyond five years from the first anniversary of the Effective Date. (That is, hypothetically, if the Effective Date is December 15, 2010 the first quarterly payment would be made on January 1, 2010 if it is a Business Day and on the first Business Day of each quarter thereafter.) The amount to be paid hereunder shall not accrue interest.

13. Class 6 consists of the residual interest of the Debtor in any remaining, non-exempt property. Class 6 is impaired under the Plan. The Class 6 claimant shall receive all non-exempt property that remains in the estate after payment in full of all other claimants.

## C.    Distributions to Creditors

The Plan sets forth a number of provisions regarding when and how distributions will be made to Claimants, the filing by the Debtor of objections to claims and the impact of such objections on distributions, the settlement of disputed claims, and the disallowance of Post-petition additions to Claims for interest and professional fees. The Plan should be reviewed carefully at Article IX for important information regarding distributions to Creditors

## D.    Executory Contracts

The Plan provides that the Debtor will cure any defaults on the Executory Contracts or unexpired leases upon Assumption. However, the Plan provides that all defaults shall be deemed cured except to the extent written demand for the cure of or demonstration of ability to cure any default has been filed with the Bankruptcy Court and served upon Debtor by the non-Debtor party to such Executory Contract or unexpired lease within thirty (30) days after the date of service of notice of the Effective Date. In the absence of a timely demand in accordance with the foregoing, Debtors' obligation to cure or demonstrate the ability to cure shall be deemed waived, released and discharged.

If any non-Debtor party to an Executory Contract or unexpired lease timely serves and files a written demand, and Debtor files an objection in writing to such demand within thirty (30) days thereafter, any monetary amounts by which each Executory Contract to be assumed pursuant to the Plan is in default, shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor, by Cure. If there is a dispute regarding (a) the nature or amount of any Cure, (b) the ability of the Debtor to provide "adequate assurance of future performance" or (c) any other matter pertaining to assumption, the dispute will be brought before the Bankruptcy Court and Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption. The Bankruptcy Court shall, by the issuance of a Final Order, determine the amount actually due and owing in respect of such demand or shall approve the settlement of such demand. Debtor shall have thirty (30) days thereafter in which to effect such Cure or withdraw ab initio its assumption of such Executory Contract or unexpired lease whereupon such Executory Contract or unexpired lease shall be deemed to have been rejected as of the date of the Chapter 11 petition for relief.

The Plan provides that if the rejection of an Executory Contract or unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages is barred unless the a proof of Claim is timely filed. The Claim shall be forever barred and shall not be enforceable unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor as follows: (a) if the Claim arises from the rejection of an Executory Contract or unexpired lease by operation of any provision of this Plan, thirty (30) days after the date of service of notice of the Effective Date; (b) if the Claim arises from the rejection of an Executory Contract or unexpired lease pursuant to a Final Order of the Bankruptcy Court (other than the Confirmation Order) authorizing rejection of such contract or lease, thirty (30) days after service of notice of the entry of such Final Order; or (c) if the Claim arises from the rejection of an Executory Contract or unexpired lease that is rejected after withdrawal of the assumption thereof, thirty (30) days after service of notice of the assumption withdrawal. The foregoing applies only to Claims arising from the rejection of an Executory Contract or unexpired lease; any other Claims held by a party to a rejected contract or lease shall have been evidenced by a proof of Claim filed by earlier applicable bar dates.

All Allowed Claims arising from the assumption of an Executory Contract or unexpired lease shall be treated as a Class 5 Unsecured Claim unless otherwise ordered by Final Order of the Bankruptcy Court.

## E.    United States Trustee

Fees payable to the United States Trustee (both pre-confirmation and post-confirmation) based upon distributions by the Debtors will be paid quarterly as those fees become due in cash. The Debtor will provide post-confirmation financial reports to the United States Trustee on a quarterly basis.

## VII
## VOTING ON THE PLAN

## A.    Who May Vote

Each Impaired Class of Claims or Interest that is likely to receive or retain any interest in property under the Plan shall be entitled to vote to accept or reject the Plan. By operation of law, each Unimpaired Class of Claims is deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan. By operation of law, each class that will receive nothing under the Plan is deemed to have rejected the Plan. Class 6 is entitled to vote on the Plan. Only creditors and equity interest holders whose claims and interests have been both **allowed** for purposes of voting and **impaired** by the Plan are entitled to vote on the Plan.

For a claim to be allowed for voting purposes, the claim must be listed in the Debtor's Chapter 11 schedules **and** must **not** be listed as "disputed", "contingent" or "unliquidated". If a claim is listed but shown as "disputed", "contingent" or

"unliquidated", the holder of the claim will not be entitled to vote absent the timely filing of a proof of claim.

If a claim is not listed, or is listed incorrectly, or is listed as "disputed", "contingent", or "unliquidated", the holder of the claim must file a proof of claim on or before the bar date set by the Court (or the Debtor must file a proof of claim for that creditor as permitted by the Federal Rules of Bankruptcy Procedure) for that creditor to be entitled to vote. Moreover, no holder of a claim will be entitled to vote if any party in interest objects to that claim before balloting on the Plan or any Amended Plan occurs, unless the Bankruptcy Court enters a specific order allowing the claim for voting purposes.

For an equity interest to be allowed, the equity interest holder's asserted interest must appear in the Debtor's schedules or the holder of the equity interest must file a proof of interest before the bar date set by the Court (or the Debtor must do so for the interest holder as permitted by the Federal Rules of Bankruptcy Procedure), and the equity interest holder must be a record holder of the Debtor's securities on the date of the order approving this Disclosure Statement is entered on the Court's docket. In addition, no entity claiming to hold an equity interest may vote if any party in interest has objected to the allowance of the asserted interest prior to voting on the Plan or any Amended Plan, unless the Bankruptcy Court enters an order allowing the interest for voting purposes.

In addition to the foregoing criteria for voting eligibility, only creditors and equity interest holders whose claims or interests are "impaired" by the Plan (i.e., those whose claims or interests are altered or who will not receive the allowed amount of their claims in cash pursuant to the original terms of their agreements) are entitled to vote to accept or reject the Plan. Holders of claims or interests which are not "impaired" are deemed to have accepted the Plan as a matter of law.

If the claim or interest you hold has been classified in one of the impaired classes of claims or interests created by the Plan, it is important that you vote. In addition, if you hold more than one claim or interest classified as "impaired" under the Plan, it is important that you vote with respect to **each** such claim or interest. **IF YOU FAIL TO VOTE, YOUR RIGHTS MAY BE JEOPARDIZED**.

## B.      Voting Procedures

After carefully reviewing this Disclosure Statement and its Exhibits, vote to accept or reject the Plan on the enclosed ballot (or ballots) and mail or deliver it (or them) to the addresses identified below so that your ballot (or ballots) are received by the voting deadline.

Under the Bankruptcy, for purposes of determining whether the Requisite Acceptances have been received, only holders of Impaired Claims who actually vote by delivering a duly executed Ballot prior to the Voting Deadline will be counted. All

ballots must be signed and received prior to the deadline set forth by the Court in the accompanying Order approving this Disclosure Statement.

Mail or deliver original ballots to:

Blake D. Gunn
Ballot Return
P.O. Box 22146
Mesa, Arizona 85277

AS MAIL DELAYS MAY OCCUR, IT IS IMPORTANT THAT THE BALLOT OR BALLOTS BE MAILED OR DELIVERED **WELL IN ADVANCE** OF THE BAR DATE SPECIFIED. BALLOTS RECEIVED AFTER THIS DATE MAY NOT BE COUNTED.

Each creditor entitled to vote is to receive a ballot for each separately classified, impaired claim held. Each equity interest holder entitled to vote is also to receive a ballot. If you believe that you are entitled to vote on the Plan and you have not received this Disclosure Statement along with the Exhibits, a Ballot and related materials, you may request them from Counsel for the Debtor at the address shown above.

If you do not receive the required number of ballots, with your copy of the Court-approved disclosure statement, notify the proponents attorneys immediately at the address noted above.

**IT IS IMPORTANT FOR YOU TO CAST ALL BALLOTS WHICH YOU ARE ENTITLED TO VOTE.**

C.      **Voting Deadline**

The Voting Deadline for the return of the ballots has been set by the Court as _____, 2010.

**In order to be counted, ballots must be appropriately completed, personally signed and received by the Clerk of the Bankruptcy Court and Debtor's Counsel no later than the Voting Deadline.**

Except to the extent requested by the Debtors, or as permitted by the Bankruptcy Court pursuant to Bankruptcy Rule 3018, Ballots received after the Voting Deadline will not be counted or otherwise used in connection with the Debtors' request for Confirmation of the Plan.

D.      **Vote Required for Class Acceptance**

A class of claims accepts the Plan if the Claimholders (other than any holder designated under Section 1126(e) of the Bankruptcy Code) who vote to accept the Plan hold at least two-thirds (2/3) in dollar amount and constitute more than one-half (1/2) in number of the allowed claims in the class **actually voting** on the Plan. A class of equity interests accepts the Plan if it is accepted by those who hold at least two-thirds (2/3) of the allowed interests in the class **actually voting** on the Plan.

## E.        Fiduciaries and Other Representatives

If a Ballot is signed by a trustee, executor, administrator, guardian, attorney-in-fact, officer of a corporation, or another acting in a fiduciary or representative capacity, such person should indicate such capacity when signing and, unless otherwise determined by Debtors, must submit proper evidence satisfactory to Debtors of authority to so act.

## F.        Defects and Irregularities

All questions as to the validity, form, eligibility (including the time of the receipt), acceptance, and revocation or withdrawal of Ballots and/or withdrawals will be determined by the Debtor in its sole discretion, which determination shall be final and binding. The Debtor reserves the absolute right to reject any and all Ballots or withdrawals not in proper form, the acceptance of which would, in the opinion of the Debtor or its counsel be unlawful. The Debtor further reserves the right to waive any defects or irregularities of conditions of delivery as to any particular Ballot or withdrawal. The interpretation by the Debtor will be final and binding on all parties. Neither the Debtor nor any other person will be under any duty to provide notification of defects or irregularities with respect to the delivery of Ballots or withdrawals, nor will any of them incur any liability for the failure to provide such notification.

## G.        Withdrawal of Ballots: Revocation

Any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Debtor at any time prior to the Voting Deadline. A notice of withdrawal, to be valid, must (i) contain the description of the Claim to which it relates and the aggregate principal amount represented by such Claim, (ii) be signed by the withdrawing party as the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim and possesses the right to withdraw the vote sought to be withdrawn, and (iv) be received by the Debtor in a timely manner at the addresses set forth in this Disclosure Statement.

## H.        Further Information

If you have any questions or require further information about the voting procedure for voting your Claim or about the packet of material received, or if you wish additional materials, call or write Blake D. Gunn at (480) 710-8677 or at Law Office of Blake D. Gunn, P.O. Box 22146, Mesa, Arizona 85277.

# VIII
## CONFIRMATION OF THE PLAN

**A.     Confirmation Hearing**

The Bankruptcy Court has scheduled the Confirmation hearing for _____, 2010 at _____ a.m./p.m. in Courtroom _____.  The Confirmation hearing may be adjourned from time to time by the Bankruptcy Court with further notice except for announcement made at the hearing or any adjourned hearing.

**B.     Objections to Confirmation of the Plan**

Bankruptcy Code section 1128(b) provides that any party in interest may object to confirmation of the Plan, regardless of whether it is entitled to vote.  The Bankruptcy Court has directed that, any written objections to the Confirmation of the Plan must be filed with the Bankruptcy Court and served upon Counsel for the Debtor and other parties in interest. Objections to Confirmation of the Plan must: (i) be in writing, (ii) comply with the Bankruptcy Code and Bankruptcy Rules, (iii) set forth the name of the objector and the nature and amount of any Claim or Interest asserted by the objector against the Debtors, and (iv) state with particularity the legal and factual bases for the objection.  Objections to the Plan are governed by Bankruptcy Rule 9014.

**Objections to Confirmation that are not timely filed and served may not be considered by the Bankruptcy Court and may be overruled solely on the basis that it was untimely.**

**Parties with objections are encouraged to contact Debtor's counsel to attempt to negotiate resolution prior to filing an objection to Confirmation.**

**C.     Requirements for Confirmation of the Plan**

At the Confirmation hearing, the Court will determine whether the Plan satisfies the requirements for Confirmation listed in § 1129(a) of the Bankruptcy Code.  If the Court determines that those requirements are satisfied, it will enter a confirmation order.  The requirements of § 1129(a) of the Bankruptcy Code are:

1.      The Plan complies with the applicable provisions of this title;

2.      The Debtor has complied with the applicable provisions of this title;

3.      The Plan has been proposed in good faith and not by any means forbidden by law;

4.      Any payment made or to be made by the by the Debtor, or by a person acquiring property under the Plan for services or for costs and expenses in, or in

connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

5.    (A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (ii) the appointment to, or continuance in, such office of such individual, is consistent with interests of creditors and equity security holders and with public policy; and (B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

6.    With respect to each Class of Claims or Interests, each Impaired Creditor and Impaired Interest holder either has accepted the Plan or will receive or retain under the Plan on account of the Claims or Interests held by such entity, property of a value, as of the Effective Date, that is not less than the amount that such entity would receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code.  See Section "Best Interests Test/Liquidation Under Chapter 7;"

7.    The Plan provides that Administrative Claims and other Priority Claims will be paid in full on the Initial Distribution Date or such later date as they are due by their own terms, except to the extent that the holder of any such Claim has agreed to a different treatment;

8.    At least one Class of Impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by insiders holding Claims in such class;

9.    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan; and

10.    The Plan provides for the continuation after the Effective Date of all retiree benefits, if any, at the level established pursuant to Bankruptcy Code Section 1114(e)(1)(B) or 1114(g), at any time prior to confirmation of the Plan for the duration of the period the Debtors have obligated itself to provide such benefits.  The Debtor does not have any such retiree benefits.

The Debtor believes that, upon receipt of the Requisite Acceptances by at least one Class of Impaired Creditors, the Plan will satisfy all the statutory requirements of Chapter 11

of the Bankruptcy Code, that the Debtors have complied or will have complied with all of the requirements of Chapter 11, and that the Plan is being proposed and will be submitted to the Bankruptcy Court in good faith.

The court values the assets of the Debtors and determines that the payments to be made under the Plan exceed the current value of the non-exempt assets owned by the Debtors so that the Plan complies with the best interest test.

## D.    Feasibility of the Plan

Bankruptcy Code section 1129(a)(11) requires that the Bankruptcy Court find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors unless such liquidation is proposed in the Plan. Since the Debtor's Plan provides for the payment of Administrative Expenses and Priority Claims on or shortly after the Effective Date, and the payment of Unsecured Classes over a period of years, the Debtor must show the Court that it has or can obtain the required monies and that future operations will generate sufficient monies to pay operating expenses with enough left over to fulfill the ongoing obligations in the Plan.

The Debtor has conservatively estimated its ability to produce income at reduced rental rates (consistent with market conditions) over the next several years. On the Effective Date, the Debtor estimates that it will have $10,000.00 in unreserved cash that can be used for the payment of the Plan obligations at or shortly after the Effective Date, in addition to all monthly payments on Allowed Secured Claims in the amounts set forth in the Plan.

## E.    Confirmation without Acceptance of All Impaired Classes "Cramdown"

Notwithstanding the rejection of any class of the Plan, the Court may still confirm the Plan if, as to each Impaired Class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable".

A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a rejecting Impaired Class is treated equally with respect to other classes with equal priority or legal rights.

"Fair and equitable" has different meanings for secured claims, unsecured claims and interests.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan, if the plan provides (a) that each holder of a claim in the rejecting class will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of the claim; or (b) but no holder of a claim or interest that is junior to the claims of the rejecting class will receive or retain under the plan any property on account of such junior claim or interest.

A plan is fair and equitable as to a class of equity interests that rejects the Plan if the plan provides (a) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; <u>or</u> (b) that no holder of an interest that is junior to the interest of the rejecting Class will receive or retain under the Plan any property on account of such junior interest.

The Debtor believes that the treatment under the Plan of the holders of Claims and Interests in such Classes will satisfy the "fair and equitable" test because all Claims shall be paid in full unless that Claimholder elects to compromise its claim by participation in the Settlement Fund. In addition, the Debtors do not believe that the Plan unfairly discriminates against any dissenting Class because all dissenting Classes of equal rank are treated equally under the Plan.

In the event that one or more classes of impaired Claims reject the Plan, the Court will determine at the Confirmation hearing whether the Plan is fair and equitable with respect to and does not discriminate unfairly against, any rejecting impaired Class Of Claims.

## F.       Alternatives to Confirmation and Consummation of the Plan

The Debtor believes that the Plan affords holders of Claims the potential for the greatest realization on their allowed Claims and on the Debtor's assets and, therefore, is in the best interest of such holders. If, nevertheless, the necessary Acceptances of the Debtor's Plan are not received, or if the necessary acceptances are received and the Plan is nevertheless not Confirmed and consummated, the theoretical alternatives include formation of an alternate plan or plans of reorganization or the liquidation of the Debtor under Chapter 7 or Chapter 11 of the Bankruptcy Court.

### 1.       Continued Operations and Delay in the Process

Debtor's goal by Confirmation of the Plan is to quickly emerge from Chapter 11 with a minimal of Administrative Expense while giving Secured Creditors the option of receiving payment of the fair market value of their collateral with interest over the original term of the loan, or the full amount of their Claim over a period of over the original term of the security agreements without interest. If this Plan is not confirmed, no matter what happens thereafter, there will inevitably be delay in the Bankruptcy process, which will undoubtedly increase the amount of Administrative Expenses (especially the fees and expenses of professionals), and will result in delay in payment to Creditors and most likely a smaller payment on their Claims.

### 2.       Alternative Plans

If the necessary Acceptances are not received or if the Plan is not confirmed, the Debtor or other parties in interest could attempt to formulate and propose a different plan or plans of reorganization. Such a plan might involve either a reorganization and continuation of the Debtor's business or an orderly liquidation. The Debtor has evaluated various reorganization strategies and has explored various alternatives in connection with the formulation and development of a Plan. The Debtor believes that the Plan as proposed provides the greatest and most likely opportunity for Creditors to get paid the greatest recovery on their claims.

3.        **Liquidation Under Chapter 7/ Best Interest Test**

Even if the Plan is accepted by each Class of holders of Impaired Claims, the Bankruptcy Court must find that the Plan is in the "best interest" of all holders of Claims that are impaired by the Plan and that have not accepted the Plan. The so-called "best interest" test, set forth in section 1129(a)(7) of the Bankruptcy Code, requires the Bankruptcy Court to find either that all members of an impaired class of claims have accepted the Plan or that the Plan will provide a member who has not accepted the Plan with property of a value, as of the Effective Date, that is not less than the amount that such holder will receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on that date.

To calculate the probable distribution to members of each impaired class of claims if a debtor were liquidated under Chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtor's assets if his Chapter 11 case were converted to a Chapter 7 case under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the Debtor's assets by a Chapter 7 trustee

This liquidation value would be distributed based on statutory priorities (i.e., no junior class of claims may be paid anything unless all classes of claims senior to such junior class are paid in full). Bankruptcy Code Section 510(a) provides that subordination agreements are enforceable in bankruptcy cases to the same extent that they are enforceable under applicable non-bankruptcy law. Therefore, no class of claims that is contractually subordinated to another class would receive any payment on account of its claims, unless all senior classes are paid in full. It is, therefore, exceedingly unlikely that Subordinated Creditors could receive anything in the event of a conversion.

The Debtor believes that under the Plan all holders of Impaired Claims and Impaired Interests will receive property with a value not less than the value such holder would receive in a liquidation of the Debtor under Chapter 7 of the Bankruptcy Code. The Debtor's beliefs are based primarily on the following facts: (a) Chapter 7 would substantially reduce the proceeds available for distribution to Creditors, including, but not limited to, the increased costs and expenses of a liquidation under Chapter 7 arising from fees payable to a Chapter 7 trustee and professional advisors to the trustee, (b) the erosion in value of assets in a Chapter 7 case in the context of the rapaid liquidation required under Chapter 7 and the "forced sale" atmosphere that would prevail, (c) the adverse effects on the

Debtor's businesses as a result of the likely departure of key employees, (d) the substantial increases in claims, such as estimated contingent claims, which would be satisfied on a priority basis or on parity with the no priority unsecured Creditors, (e) the reduction of value associated with a Chapter 7 trustee's likely cessation of operations, and (f) the substantial delay in distributions to the Debtor's Creditors that would likely ensue in a Chapter 7 liquidation; and (g) the liquidation analysis prepared by the Debtor which is annexed to this Disclosure Statement as Exhibit A (the "Liquidation Analysis").

The Debtor believes that any liquidation analysis is speculative, as such an analysis necessarily is premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the Debtor's control. Thus, there can be no assurance as to the values that would actually be realized in a Chapter 7 liquidation, nor can there be any assurance that a Bankruptcy Court would accept the Debtors' conclusions or concur with such assumptions in making its determinations under Bankruptcy Code Section 1129(a)(7).

For example, the Liquidation Analysis attached hereto necessarily contains an estimate of the amount of Claims which will ultimately become Allowed Claims. This estimate is based on the Debtor's review of its books and records and the Claims filed in the Chapter 11 Case and its estimation of the Claims that might arise in the event of a conversion of the case from Chapter 11 to Chapter 7. The Bankruptcy Court has not estimated or fixed the amount of Claims at the projected amounts of Allowed Claims set forth in the Liquidation Analysis. The estimate of the amount of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of Allowed Claims under the Plan.

To the extent that confirmation of the Plan requires the establishment of amounts for the Chapter 7 liquidation value of the Debtors, funds available to pay Claims, and the reorganization value of the Debtors, the Bankruptcy Court will determine those amounts at the Confirmation Hearing. Accordingly, the annexed Liquidation Analysis is provided solely to disclose to holders the effects of a hypothetical Chapter 7 liquidation of the Debtor, subject to the assumptions set forth therein.

If no plan is confirmed, the Chapter 11 Case may be converted to a case under Chapter 7. In Chapter 7 a trustee would be elected or appointed to liquidate the Debtor's assets for distribution to Creditors in accordance with the priorities set by the Bankruptcy Code. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of Claims against the Debtor. The Debtor believes, however, that the distributions to each Creditor in Chapter 7 would be less than or equal to the distributions they would receive under the Plan

### G.  Modifications and Amendments

The Debtor may alter, amend, or modify the Plan or any Exhibits thereto under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After

the Confirmation Date and prior to "substantial consummation" of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, the Debtor may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of holders of Claims or Interests under the Plan; *provided, however,* that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

## H.    Effects of Confirmation

### 1.    Binding Effect

From and after the Effective Date, the Plan will be binding upon and insure to the benefit of the Debtor, all present and former holders of Claims against and Interests in the Debtor, whether or not such holders will receive or retain any property or interest in property under the Plan, their respective successors and assigns.

### 2.    Permanent Injunction

Except as otherwise expressly provided in the Plan or the Confirmation Order, all entities who have held, hold or may hold Claims against, or Interests in, the Debtor will be permanently enjoined, on and after the Effective Date, from (i) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the property of the Estate or the proceeds of such property, of any kind against the property or interests in such property while it remains in the Estate, on account of any such Claim or Interest, (iii) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Interest, and (iv) asserting any Claim or Interest against Buyer other than Claims directly related to the assumed liabilities or rights under the Executory Contracts that are assigned to the Buyer.

### 3.    Exculpation and Limitation on Liability

Neither the Debtor, nor any of its respective present or former employees, advisors, attorneys, or agents, shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the sale of the Debtor's assets pursuant to the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan or the property to be distributed under the Plan, and in all respects they shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

Notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Debtor, or any of its respective present or former members, officers, directors, employees, advisors, attorneys, or agents, for any act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the sale of assets pursuant to the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or of the Plan or the property to be distributed under the Plan, and in all respects they shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

## IX
## CERTAIN RISK FACTORS RELATING TO THE PLAN

Holders of Impaired Claims who are entitled to vote on the Plan should carefully consider the following risk factors before deciding whether to vote to accept or to reject the Plan.

### A. Failure to Confirm the Plan

Even if the Requisite Acceptances are received, the Bankruptcy Court may choose not to confirm the Plan. Although the Debtor believes that the Plan should be confirmed, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### B. Failure to Consummate the Plan

Certain conditions must be satisfied in order for the Plan to become effective and to be consummated. Unless such conditions are fully satisfied, or waived in accordance with the applicable provisions of the Plan, the Bankruptcy Code, the transactions contemplated in the Plan will not be consummated, and the Plan will not become effective.

Although the Debtor believes that each such condition can be satisfied, the ability to satisfy certain of the conditions is dependent on rulings by the Bankruptcy Court which are favorable to the Debtor. Furthermore, while the Debtor has well supported arguments for its position with respect to the issues to be decided by the Bankruptcy Court and believes in good faith that it can prevail with respect to the requested rulings, the outcome of any particular ruling cannot be guaranteed.

Moreover, the Debtor must accumulate sufficient monies to pay Administrative Expenses and classes with payments due on the Effective Date or negotiate alternative payment arrangements.

Since this plan provides for payments over a period of time out of future operating income, performance under the Plan is dependent on the Debtor's future success. While the

Debtor believes in its prospects for future success and that it can meet his forecast of future income, such is dependent on numerous factors and by its nature uncertain.

## X
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**A.      Federal Income Tax Consequences to the Debtors**

The Debtor does not believe that implementation of the Plan will generate significant taxes payable by the Debtor's Estate.

**B.  Federal Income Tax Consequences to the Holders of Claims**

The tax impact of the consummation of the Plan on Claim Holders and Interest Holders will depend on their individual tax circumstances, including without limitation their basis in the Claims or Interests they hold.  The Debtor cannot provide such holders with tax advice.  Each holder should consult with its own tax professional.

## XI
## RECOMMENDATION AND CONCLUSION

The Debtor recommends that all creditors entitled to do so vote to accept the Plan because the Plan provides the best presently available alternative for a financial return.  If the Plan is not approved, the Debtor would continue to seek other rehabilitative alternatives, but a liquidation having the consequences discussed previously might ensue.

If all impaired classes of claims and equity interests vote to accept the Plan, the Debtor could save substantial resources which it might otherwise have to use to obtain confirmation over the objection of an impaired class.  For this and the other reasons noted, the Debtor urges you to vote to accept the Plan.

RESPECTFULLY SUBMITTED this 5th day of August 2010.

LAW OFFICE OF BLAKE D. GUNN

By /s/ Blake D. Gunn 019112
        Blake D. Gunn
        P.O. Box 22146
        Mesa, Arizona 85277
        Attorney for Debtor

Copy of the foregoing mailed*/hand delivered
this 5th day of August 2010, to:

Office of the United States Trustee
230 North First Avenue
Suite 204
Phoenix, Arizona 85067

All persons requesting notice


By /s/ Blake D. Gunn 019112